**In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION.**

**This Order Relates To: Direct Purchaser Class Action Cases.**

**MDL No. 1917.**
**No. C–07–5944–SC.**

United States District Court, N.D. California.

Nov. 29, 2012.

Bruce Lee Simon, Ashlei Melissa Vargas, Jonathan Mark Watkins, Aaron M. Sheanin, Pearson, Simon, Warshaw & Penny, LLP, Guido Saveri, Cadio R. Zirpoli, Gianna Christa Gruenwald, Richard Alexander Saveri, Geoffrey Conrad Rushing, David Nathan–Allen Sims, Saveri & Saveri, Inc., Esther L. Klisura, Sher Leff LLP, Terry Gross, Gross Belsky Alonso LLP, Joseph Mario Patane, Law Office of Joseph M. Patane, Lauren Clare Russell, Mario N. Alioto, Trump Alioto Trump & Prescott, LLP, Craig C. Corbitt, Christopher Thomas Micheletti, Francis Onofrei Scarpulla, Judith A. Zahid, Patrick Bradford Clayton, Qianwei Fu, Zelle Hofmann Voelbel & Mason LLP, Jennie Lee Anderson, Lori Erin Andrus, Andrus Anderson LLP, Kenneth Leo Valinoti, Valinoti & Dito LLP, Joseph M. Alioto, Sr., Angelina Alioto–Grace, Joseph Michelangelo Alioto, Jr., Theresa Driscoll Moore, Alioto Law Firm, Daniel Joseph Mulligan, St. James Recovery Services, P.C., Derek G. Howard, Minami Tamaki LLP, Susan Gilah Kupfer, Glancy Binkow & Goldberg LLP, John Dmitry Bogdanov, Tracy R. Kirkham, Cooper & Kirkham, P.C., Gilmur Roderick Murray, Murray & Howard, LLP, Allan Steyer, Donald Scott MacRae, Jayne Ann Peeters, Jill Michelle Manning, Steyer Lowenthal Boodrookas Alvarez & Smith LLP, Christopher L. Lebsock, Hausfeld LLP, Lingel Hart Winters, Law Offices of Lingel H. Winters, Sylvie K. Kern, KAG Law Group, Euphemia Nikki Thomopulos, Joren Surya Bass, Perkins Coie LLP, Jonathan Alan Patchen, Taylor & Company Law Offices, LLP, San Francisco, CA, Christopher Wilson, Patrick John Brady, Polsinelli Shughart PC, Daniel D. Owen, Shughart Thomson & Kilroy, P.C., Kansas City, MO, Clifford H. Pearson, Daniel L. Warshaw, Pearson, Simon, Warshaw & Penny LLP, Sherman Oaks, CA, Jessica Lynn Meyer, Kelly Laudon, Lindquist Vennum, PLLP, Richard M. Hagstrom, Zelle Hofmann Voelbel Mason & Gette LLP, Seymour J. Mansfield, Jean B. Roth, Lawrence P. Schaefer, Mansfield Tanick & Cohen, Jeffrey D. Bores, Karl L. Cambronne, Chestnut & Cambronne, Jason Kilene, Gustafson Gluek PLLC, Laura Elizabeth Nelson, Robins Kaplan Miller and Ciresi, Minneapolis, MN, Clinton Paul Walker, Fred A. Silva, Kathy Lee Monday, Roger Martin Schrimp, Damrell, Nelson, Schrimp, Pallios, Pache & Silva, Betty Lisa Julian, Modesto, CA, Joseph W. Cotchett, Niki B. Okcu, Steven Noel Williams, Cotchett Pitre & McCarthy, LLP, Burlingame, CA, Randy R. Renick, Hadsell Stormer Richardson & Renick LLP, Pasadena, CA, Brian Joseph Barry, Law Offices of Brian Barry, Jeff S. Westerman, Westerman Law Corp, David Martinez, Jill Sharon Casselman, Roman M. Silberfeld, Robins, Kaplan, Miller and Ciresi L.L.P., Jason C. Murray, Crowell & Moring LLP, Gavin David Whitis, Pond North LLP, Los An-

geles, CA, John G. Emerson, Emerson Poynter LLP, David M. Peterson, John Pierre Lahad, Johnny William Carter, Jonathan Jeffrey Ross, Susman Godfrey LLP, Houston, TX, Lawrence D. McCabe, Murray Frank & Sailer LLP, Lee Albert, Glancy Binkow & Goldberg LLP, Linda Phyllis Nussbaum, Grant & Eisenhofer P.A., Elizabeth Anne McKenna, Paul F. Novak, Andrew J. Morganti, Milberg LLP, Peter G.A. Safirstein, Morgan & Morgan, Robert J. Gralewski, Daniel Hume, Kirby McInerney LLP, Gregory Keith Arenson, Robert N. Kaplan, Kaplan Fox & Kilsheimer LLP, New York, NY, Bryan L. Clobes, Cafferty Clobes Meriwether & Sprengel LLP, Eugene A. Spector, William G. Caldes, Spector Roseman Kodroff & Willis, PC, Anthony J. Bolognese, Joshua H. Grabar, Bolognese & Associates, LLC, Philadelphia, PA, James E. Cecchi, Lindsey H. Taylor, Carella Byrne Bain Gilfillan Cecchi Stewart & Olstein PC, Roseland, NJ, Robert B. Gerard, Gerard Selden & Osuch, Marisa C. Livesay, San Diego, CA, Mary Jane Edelstein Fait, Wolf Haldenstein Adler Freeman Herz LLP, Joseph Michael Vanek, Vanek Vickers & Masini PC, David Paul Germaine, Chicago, IL, James McManis, Marwa Elzankaly, McManis, Faulkner, San Jose, CA, Joel Flom, Jeffries Olson & Flom PA, Fargo, ND, Lawrence Genaro Papale, Law Offices of Lawrence G. Papale, St. Helena, CA, M. Eric Frankovitch, Michael G. Simon, Frankovitch Anetakis Colantonio & Simon, Weirton, WV, Sherman Kassof, Law Offices of Sherman Kassof, Lafayette, CA, Daniel R. Karon, Goldman Scarlato & Karon, Drew A. Carson, Steven J. Miller, Miller Goler Faeges, Cleveland, OH, Mary Gilmore Kirkpatrick, Kirkpatrick & Goldborough PLLC, South Burlington, VT, Robert James Pohlman, Ryley Carlock & Applewhite PC, Phoenix, AZ, Kathleen Styles Rogers, San Mateo, CA, Charles H. Johnson, Charles H Johnson & Associates PA, Neal A. Eisenbraun, Neal A. Eisenbraun, Chartered, New Brighton, MN, Garrett D. Blanchfield, Jr., Mark Reinhardt, Reinhardt Wendorf & Blanchfield, St. Paul, MN, Robert J. Bonsignore, Bonsignore & Brewer, Belmont, NH, Donna F. Solen, Whitfield Bryson & Mason LLP, Donna F. Solen, Mason Law Firm, Steven F. Benz, Kellogg, Huber, Hansen, Todd, William A. Isaacson, Melissa Willett, Boies Schiller & Flexner LLP, Astor Henry Lloyd Heaven, III, Jerome A. Murphy, Crowell & Moring LLP, Washington, DC, Issac L. Diel, Sharp McQueen, Overland Park, KS, Krishna B. Narine, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, Gary Laurence Specks, Kaplan Fox & Kilsheimer LLP, Highland Park, IL, Linda P. Nussbaum, Nussbaum LLP, Scarsdale, NY, Kevin Bruce Love, Hanzman Criden & Love, P.A., South Miami, FL, Lisa J. Rodriguez, Trujillo Rodriguez & Richards LLP, Haddonfield, NJ, Christina Diane Crow, Jinks, Crow & Dickson P.C., Union Springs, AL, J. Matthew Stephens, James Michael Terrell, Robert G. Methvin, Robert Gordon Methvin, Jr., McCallum, Methvin & Terrell, P.C., Keith Thomson Belt, Jr., Robert Page Bruner, Belt Law Firm, P.C., Richard Freeman Horsley, King, Horsley & Lyons, Christopher William Cantrell, Birmingham, AL, Robert Brent Irby, Eric D. Hoaglund, McCallum, Hoaguland Cook & Irby LLP, Vestavia Hills, AL, David Michael Kerwin, Washington State Attorney General's Office, Cori Gordon Moore, Nicholas H. Hesterberg, David Burman, Perkins Coie LLP, Seattle, WA, Benjamin Daniel Battles, Anne M. Nardacci, Philip J. Iovieno, Christopher V. Fenlon, Boies Schiller & Flexer, Albany, NY, Stuart Harold Singer, Boies Schiller & Flexner, Fort Lauderdale, FL, Lewis Titus LeClair, Mike McKool, Jr., Scott R. Jacobs, McKool Smith, P.C., Dallas, TX, Patricia A. Conners, Attorney General's Office, Department of Legal Affairs, R. Scott Palmer, Liz Ann Brady, Nicholas J. Weil-

hammer, Satu A. Correa, Office of the Attorney General, Tallahassee, FL, William J. Blechman, James T. Almon, Kevin J. Murray, Richard A. Arnold, Ryan C. Zagare, Kevin J. Murray, Kenny Nachwalter PA, Jalaine Garcia, Mitchell E. Widom, Robert Turken, Scott N. Wagner, Bilzin Sumberg Baena Price & Axelrod, LLP, Miami, FL, James M. Lockhart, James P. McCarthy, Lindquist & Vennum, P.L.L.P., Jennifer Milici, Boies Schiller & Flexner LLP, Adam C. Belsky, Monique Alonso, Sarah Crowley, Gross Belsky Alonso LLP, Betsy Carol Manifold, Francis M. Gregorek, Rachele R. Rickert, Wolf Haldenstein Adler Freeman & Herz LLP, Lynn W. Jinks, Nathan A. Dickson, Jinks Crow· & Dickson PC, for Plaintiffs.

Joel Steven Sanders, Gibson, Dunn & Crutcher LLP, Gary L. Halling, Michael W. Scarborough, James Landon McGinnis, Sheppard Mullin Richter & Hampton LLP, Sharon D. Mayo, Arnold & Porter LLP, Thomas R. Green, Morgan Lewis ·& Bockius LLP, Hojoon Hwang, Jerome Cary Roth, Munger Tolles & Olson LLP, Joseph Richard Wetzel, King & Spalding, Margaret Anne Keane, Littler Mendelson, PC, Michael Frederick Tubach, O'Melveny & Myers LLP, Dylan Ian Ballard, San Francisco, CA, Christopher M. Curran, George L. Paul, Lucius Bernard Lau, Dana E. Foster, White & Case LLP, John M. Taladay, Baker Botts L.L.P., John Clayton Everett, Jr., Scott A. Stempel, Christine S. Safreno, Jonathan DeGooyer, Morgan, Lewis Bockius LLP, Terry Calvani, Bruce C. McCulloch, Christine A. Laciak, Richard Sutton Snyder, Freshfields Bruckhaus Deringer US LLP, David Kendall Roberts, Kevin Douglas Feder, Haidee L. Schwartz, Benjamin Gardner Bradshaw, O'Melveny and Myers LLP, Joseph A. Ostoyich, Howrey LLP, Kate S. McMillan, Douglas L. Wald, Charles M. Malaise, Courtney C. Byrd, Washington, DC, Jeffrey L. Kessler, Eva W. Cole, A. Paul Victor, Aldo A. Badini, James F. Lerner, Molly Donovan, Winston & Strawn LLP, David E. Yolkut, Kevin B. Goldstein, Weil, Gotshal, & Manges; LLP, Ethan E. Litwin, Hughes Hubbard & Reed LLP, New York, NY, Jon Vensel Swenson, Baker Botts L.L.P., Joseph R. Tiffany, II, Pillsbury Winthrop Shaw Pittman LLP, Bijal Vijay Vakil, Jeremy Kent Ostrander, White & Case LLP, David Michael Lisi, Reed Smith LLP, Palo Alto, CA, Andrew R. Tillman, Paine Tarwater Bickers & Tillman, Knoxville, TN, Gregory Hull, Weil, Gotshal & Manges LLP, Redwood Shores, CA, William Diaz, McDermott Will & Emery LLP, Irvine, CA,. Bernadette Shawan Gillians, William C. Cleveland, Buist Moore Smythe and McGee, Charleston, SC, Rachel S. Brass, Gibson Dunn & Crutcher LLP, Diane Leslie Webb, Michelle Park Chiu, Morgan, Lewis & Bockius, Bethany W. Kristovich, Jonathan Ellis Altman, William D. Temko, Laura K. Sullivan, Munger, Tolles and Olson LLP, Kim YoungSang, Arnold & Porter LLP, Adam C. Hemlock, Lucia Freda, Weil Gotshal & Manges LLP, Molly M. Donovan, Dewey & LeBoeuf LLP, Tyler Mark Cunningham, Sheppard Mullin Richter & Hampton, Charise Naifeh, Matthew Frutig, White & Case LLP, David T. Emanuelson, Erik T. Koons, Baker Botts LLP, Anton Metlitsky, for Defendants.

Kent Michael Roger, Morgan Lewis & Bockius LLP, San Francisco, CA, Steven Alan Reiss, David L. Yohai, Weil, Gotshal & Manges LLP, New York, NY, Ian T. Simmons, O'Melveny & Myers LLP, Washington, DC.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

SAMUEL CONTI, District Judge.

### I. INTRODUCTION

This antitrust case· arises from allegations that Defendants fixed the prices of

cathode ray tubes ("CRTs"), which were common components of television sets and computer monitors before the advent of flat-panel screens. On December 12, 2011, Defendants filed a joint motion for summary judgment against nine members of a purported class of alleged direct purchaser plaintiffs ("Named DPPs").[1] ECF No. 1013 ("MSJ"). The Named DPPs are retailers who purchased televisions and monitors containing CRTs (finished products or "FPs"), as opposed to purchasing the allegedly price-fixed CRTs directly. Defendants argue that, because the Named DPPs did not purchase CRTs directly, they lack antitrust standing under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

On May 31, 2012, the Special Master[2] recommended that the Court grant Defendants' motion and enter summary judgment against the Named DPPs. ECF No. 1221 ("R & R"). The Court ordered the parties to submit any briefs addressing the R & R simultaneously, and permitted a separate plaintiff group consisting of large retailers who declined to join the DPP class action, the direct action plaintiffs ("DAPs"), to participate in the briefing. ECF No. 1240. The Court received three briefs. Defendants move for the Court to adopt the R & R. ECF No. 1274 ("Defs. Brief"). The Named DPPs have filed an objection to the R & R under seal ("DPP Brief").[3] The DAPs also object. ECF No. 1273 ("DAP Brief"). For the reasons set forth herein, the Court GRANTS Defendants' motion for summary judgment in part and DENIES it in part.

## II. BACKGROUND

The factual and procedural background of this case is familiar to the parties and the Court, so only a brief review is provided here. Defendants are allegedly manufacturers of CRTs and, in some cases, of FPs as well.[4] They are alleged to have engaged in a conspiracy to fix the prices of CRTs. The thrust of the DPPs' allegations is that the allegedly price-fixed CRTs were incorporated into FPs like television sets and computer monitors and, hence, inflated the price of the FPs that the DPPs purchased. *See generally* ECF No. 436 ("DPP Compl."). The DPPs' complaint has already survived a motion to dismiss. *CRT*, 738 F.Supp.2d 1011. After the Court denied Defendants' motion to dismiss, Defendants, pursuant to Federal Rule of Civil Procedure 11, moved to strike the DPPs' allegations of a conspiracy to fix the price of FPs. The Special Master issued a report

---

1. The nine Named DPPs are: Arch Electronics, Inc.; Crago d/b/a Dash Computers, Inc.; Electronic Design Company; Meijer, Inc. and Meijer Distribution, Inc.; Nathan Muchnick, Inc.; Orion Home Systems, LLC; Radio & TV Equipment, Inc.; Royal Data Services, Inc.; and Studio Spectrum, Inc. The Named DPPs are only nine of the thirteen members of the entire putative DPP class. As explained in Section IV.A *infra*, the term "direct purchaser" is a misnomer as applied to the Named DPPs, who are actually indirect purchasers. However, the Court uses the term "DPP" to stay consistent with past orders and to differentiate the Named DPPs from a putative class called the indirect purchaser plaintiffs, as well as from the direct action plaintiffs.

2. On June 16, 2008, the Court appointed the Honorable Charles A. Legge, United States District Judge (Retired), as a Special Master to assist the Court with this litigation. ECF No. 302.

3. The Court received the Named DPPs' brief in chambers under seal. *See* ECF Nos. 1271 (motion to seal), 1276 (notice of errata and amended motion to seal), 1300 (order granting amended motion to seal).

4. Though the DPPs have sued entire corporate families and often refer to them by a single name, a particular corporate entity within a family may be dedicated to selling FPs rather than CRTs. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F.Supp.2d 1011, 1019–1020 (N.D.Cal.2010) (Conti, J.).

recommending that the Court grant the Rule 11 motion. ECF No. 947. Before the Court ruled on the Special Master's recommendation, however, the parties stipulated to the DPPs' withdrawal of those allegations. Specifically, the stipulation withdrew and struck the DPPs' allegations of "a conspiracy encompassing Finished Products ... provided, however, that the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case." ECF No. 996 ("Stip.") at 2.

Following this stipulation, Defendants moved for summary judgment on the ground that DPPs who had purchased FPs but not the allegedly price-fixed CRTs—that is, the nine Named DPPs—lacked antitrust standing under *Illinois Brick.* MSJ at 1. The Special Master, after briefing and a hearing, recommended that the Court grant the motion. R & R at 12–13. The Special Master first found that the Named DPPs had never purchased a CRT, as opposed to an FP containing a CRT. *Id.* at 5. He based this finding on both the evidentiary record and the admission of counsel at oral argument. *Id.* (citing hearing transcript). The Named DPPs do not challenge this finding in their objection. *See* DPP Brief at 16.

Beginning from the premise that the Named DPPs purchased FPs only, the Special Master concluded that they lack standing under § 4 of the Clayton Act. That statute provides that only a person "injured in his business or property by reason of anything forbidden in the antitrust laws" has standing to bring an antitrust suit. 15 U.S.C. § 15. "The Supreme Court has interpreted that section narrowly, thereby constraining the class of parties that have statutory standing to recover damages through antitrust suits." *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson,* 523 F.3d 1116, 1120 (9th Cir.2008) (citing *Illinois Brick,* 431 U.S.

720, 97 S.Ct. 2061). Only "the overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business or property' within the meaning of the section ...." *Illinois Brick,* 431 U.S. at 729, 97 S.Ct. 2061.

The Special Master emphasized the bright-line nature of the *Illinois Brick* rule and described the Supreme Court, the Ninth Circuit, and district courts within the Ninth Circuit as having rejected the creation of exceptions to this rule. R & R at 7–8 (collecting appellate cases), 8–9 (collecting district court cases). The Special Master noted that the Named DPPs relied on exceptions to the *Illinois Brick* rule that the Third Circuit articulated in *In re Sugar Industry Antitrust Litigation,* 579 F.2d 13 (3rd Cir.1978) and *In re Linerboard Antitrust Litigation,* 305 F.3d 145 (3rd Cir.2002). *Id.* at 10–11. The Special Master also observed that Judge Illston of this Court relied on the same Third Circuit opinions in several rulings in the closely related TFT–LCD antitrust litigation, rulings which, the Special Master noted, were in tension with his recommendations. *Id.* at 10. The Special Master distinguished the facts of the instant case from those before Judge Illston. *Id.* at 11. He also concluded that *Sugar* and Linerboard "are not the law of the Ninth Circuit." *Id.* Accordingly, the Special Master recommended that the Court enter summary judgment against the Named DPPs on the ground that, because they did not directly purchase the price-fixed CRTs, they were "at best" indirect purchasers who lacked antitrust standing. *Id.* at 12–13.

### III. *LEGAL STANDARD*

The Court reviews the Special Master's factual findings for clear error and his legal conclusions de novo. Fed.R.Civ.P. 53(f)(3), (f)(4); ECF No. 302 ("Order Ap-

pointing Special Master") ¶ 18 (parties stipulated to "clear error" standard for factual findings). Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). Summary judgment should be granted if the evidence would require a directed verdict for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Id.*

## IV. DISCUSSION

### A. Illinois Brick *and Its Exceptions*

The Named DPPs do not challenge the Special Master's central finding that they never purchased a CRT, as opposed to a FP. Hence, absent a showing of clear error, the Court adopts this finding and bases its de novo review of the Special Master's legal conclusions on the factual premise that the Named DPPs purchased FPs containing the allegedly price-fixed CRTs but did not directly purchase CRTs themselves. Accordingly, the Named DPPs, though they are members of a putative class that has been denominated "direct purchaser plaintiffs" throughout this litigation, are in fact indirect purchasers for purposes of antitrust standing.

■■■ This brings the Named DPPs squarely within the scope of the *Illinois Brick* rule. The rule is straightforward: "only direct purchasers have standing under § 4 of the Clayton Act to seek damages for antitrust violations." *Del. Valley*, 523 F.3d at 1120–21. "[I]ndirect purchasers in a chain of distribution are precluded from suing for damages based on unlawful overcharges passed on to them by intermediates in the distribution chain who purchased directly from the alleged antitrust violator." *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1211–12 (9th Cir.1984) (citing *Illinois Brick*, 431 U.S. at 746, 97 S.Ct. 2061). In other words, *Illinois Brick* prevents the offensive use of a "pass-through" theory. 431 U.S. at 729–35, 97 S.Ct. 2061.[5] Under the general rule, then, only the first party in the chain of distribution to purchase a price-fixed product has standing to sue. *See, e.g., Shamrock Foods*, 729 F.2d at 1212 (where plaintiffs who paid only retail price abandoned allegations of wholesale price-fixing but continued to allege retail price-fixing, *Illinois Brick* was no bar because no passthrough was alleged).

"The underlying purposes for the [*Illinois Brick*] rule are (1) to eliminate the

5. In *Hanover Shoe,* the Supreme Court barred the defensive use of a pass-through theory, thereby allowing antitrust plaintiffs to recover damages in excess of their actual losses. *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 491–94, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). *Illinois Brick* extended the holding of *Hanover Shoe* to the offensive context. *E.g., Del. Valley*, 523 F.3d at 1120 (citing *Illinois Brick*, 431 U.S. at 728, 97 S.Ct. 2061).

complications of apportioning overcharges between direct and indirect purchasers . . .; (2) to eliminate · multiple recoveries . . .; and (3) to promote the vigorous enforcement of the antitrust laws . . .." *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 748 (9th Cir.2012) (internal quotation marks and citations omitted) (quoting *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208, 212, 214, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990)). With respect to the first, "apportionment" rationale, *Illinois Brick* "sought to avoid increasing the cost and burden of antitrust actions with complicated damage theories necessitating massive evidence to determine how the overcharge was apportioned throughout the distribution chain." *Shamrock Foods,* 729 F.2d at 1212 (citing *Illinois Brick,* 431 U.S. at 731–32, 97 S.Ct. 2061). As to the second, "multiple recoveries" rationale, the Ninth Circuit has explained that "allowing every person along a chain of distribution to claim damages arising from a single violation of the antitrust laws would create a risk of duplicative recovery against the violator unintended by Congress." *Id.* (citing *Illinois Brick,* 431 U.S. at 730, 97 S.Ct. 2061). This risk is especially severe in light of the availability of treble damages. *Cf. Illinois Brick,* 431 U.S. at 729–730, 97 S.Ct. 2061. As to the·third, "enforcement" rationale, *Illinois Brick,* as well as Ninth Circuit cases following it, have recognized Congress's intent to utilize overcharged purchasers as "private attorneys general" to deter anticompetitive behavior and enforce the antitrust laws. *See id.* at 745–46, 97 S.Ct. 2061; *Royal Printing Co. v. Kimberly–Clark Corp.,* 621 F.2d 323, 325–26 (9th Cir.1980); *Shamrock Foods,* 729 F.2d at 1212; *Del. Valley,* 523 F.3d at 1124. The *Illinois Brick* rule is intended to promote enforcement of the antitrust laws by conferring standing on the party most likely to bring suit. *See Illinois Brick,* 431 U.S. at 745–46, 97 S.Ct. 2061 (concluding that Congressional intent to empower private attorneys general "is better served by holding direct purchasers to be ·injured to the full extent of the overcharge paid by them than by attempting to apportion the overcharge among all that may have absorbed a part of it"); *see also Shamrock Foods,* 729 F.2d at 1212 (citing *Illinois Brick,* 431 U.S. at 746–47, 97 S.Ct. 2061) ("[D]irect purchasers absorb at least some and often most of the overcharges and are more likely to come forward to collect their damages" than indirect purchasers.).

■ The so-called *"Illinois Brick* wall," *Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1049 (9th Cir.2008), looms as an imposing barrier for antitrust plaintiffs who, like the Named DPPs here, rely on a pass-through theory. The wall is not impassable, however, for although "the Supreme Court has expressed reluctance in carving out exceptions to˙ the *Illinois Brick* rule, limited exceptions do exist." *ATM Fee,* 686 F.3d at 749. These exceptions, when applicable, permit indirect purchasers to pursue private treble-damages claims notwithstanding the usual prohibition of *Illinois Brick.* Hence, the question of whether the Named DPPs have standing does not turn solely on their status as direct˙ or indirect purchasers. As indirect purchasers, their standing depends on whether any of the recognized exceptions apply.

■ In *ATM Fee,* which was decided after ·the Special Master issued his report, the Ninth Circuit outlined the three recognized exceptions to *Illinois Brick* ·in systematic fashion. First, the panel explained that the Supreme Court has "recognized standing for indirect purchasers when a preexisting cost-plus contract with the· direct purchaser exists." *Id.* (citing *Illinois Brick,* 431 U.S. at 736, 97 S.Ct. 2061; *UtiliCorp,* 497 U.S. at 217–18, 110 S.Ct. 2807). "Second, indirect purchasers may have standing under a 'co-conspirator' exception." *Id.* (citing 2A Phillip E. Areeda *et*

al., *Antitrust Law* ¶ 346h (3d ed.2007)). Under this exception, "an indirect purchaser may bring suit where he establishes a price-fixing conspiracy between the manufacturer and the middleman." *Id.* (quoting *Del. Valley*, 523 F.3d at 1123 n. 1). "However, for the indirect purchaser to merit standing under this exception, the conspiracy must fix the price paid by the plaintiffs." *Id.* (citing *Shamrock Foods*, 729 F.2d at 1211). Finally, under the third exception, "indirect purchasers may sue when customers of the direct purchaser own or control the direct purchaser ... or when a conspiring seller owns or controls the direct purchaser ...." *Id.* (citing *Illinois Brick*, 431 U.S. at 736 n. 16, 97 S.Ct. 2061; *Royal Printing*, 621 F.2d at 326). "For example, an indirect purchaser may sue if the direct purchaser is a division or subsidiary of the price-fixing seller." *Id.*[6]

Importantly, these exceptions are not based on market-specific factors; indeed, courts regularly acknowledge *Illinois Brick*'s warning against carving out exceptions for certain kinds of markets. *E.g., UtiliCorp*, 497 U.S. at 216, 110 S.Ct. 2807 (citing *Illinois Brick*, 431 U.S. at 744, 97 S.Ct. 2061); *Del. Valley*, 523 F.3d at 1124 (same). Neither do they depend on case-specific factors. *See UtiliCorp*, 497 U.S. at 216–17, 110 S.Ct. 2807 (observing that *Illinois Brick's* rationale "will not apply with equal force in all cases" and that its economic assumptions "might be disproved in a specific case," but affirming its brightline rule regardless). The exceptions cover situations where either *Illinois Brick*'s concern over multiple recovery and apportionment does not apply, or its policy of encouraging private antitrust suits would be stymied by mechanical ap-

plication of its bright-line rule. *See Shamrock Foods*, 729 F.2d at 1214 (holding "that the policy considerations identified in *Illinois Brick* do not apply" in co-conspirator cases); *Royal Printing*, 621 F.2d at 326 n. 7 (establishing ownership and control exception because "blind application of the *Illinois Brick* rule would eliminate the threat of private enforcement" in such cases). Thus, in the instant case, the Court must attend carefully to the contours of the exceptions recognized by the Ninth Circuit, as well as to the policies of *Illinois Brick* justifying those exceptions.

To begin, the Named DPPs do not allege that they had a preexisting cost-plus contract with any of the Defendants, so the first *Illinois Brick* exception clearly does not apply. *See ATM Fee*, 686 F.3d at 750. The other two exceptions, the co-conspirator exception and the ownership and control exception, bear more extended discussion, and the Court turns now to them.

### B. *The Co–Conspirator Exception*

■ The co-conspirator exception allows an indirect purchaser to sue when the direct purchaser conspires horizontally or vertically to fix the price paid by the plaintiffs. *ATM Fee*, 686 F.3d at 750 (citing *Shamrock Foods*, 729 F.2d at 1211). Put another way, "the co-conspirator exception applies when the conspirators set the price paid by the consumer." *Id.* at 751 (citing *Kendall*, 518 F.3d 1042); *see also Shamrock Foods*, 729 F.2d at 1211. Conversely, the exception does not apply if the plaintiff's "theory of recovery depends on pass-on damages." *Id.* at 755. The rationale for the exception is that co-conspirator cases do not implicate two key policies

---

**6.** Before *ATM Fee*, the case law hinted at the possible existence of a fourth exception that would apply when "there is no realistic possibility that the direct purchaser will sue." 686 F.3d at 749 (quoting *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1145–46

(9th Cir.2003)). The *ATM Fee* panel explained, however, that *Freeman* did not create a fourth exception. It simply restated the ownership and control exception already established by *Royal Printing*. *See id.* at 756.

underlying the *Illinois Brick* rule—the elimination of multiple recoveries by successive tiers of plaintiffs, as well as of the complicated apportionment of damages among them—because the co-conspirator exception confers standing on only a single tier of plaintiffs, those who directly pay the fixed price. *See Shamrock Foods,* 729 F.2d at 1213–14. Indeed, as the Ninth Circuit recently explained, "this co-conspirator exception is not really an exception at all," but rather a straightforward application of *Illinois Brick* in situations where the direct purchaser is part of the price-fixing conspiracy and the plaintiff directly pays the price set by the conspiracy. *See ATM Fee,* 686 F.3d at 750.

■ In this case, the DPPs have alleged a conspiracy to fix the price of CRTs, but they have expressly stipulated to the withdrawal of their allegations of a conspiracy to fix the price of FPs incorporating those CRTs. Stip. at 2. Accordingly, the conspiracy alleged by the DPPs extends only far enough to fix the price of CRTs. As the Special Master found, and the Named DPPs do not deny, the price of CRTs is not the price the Named DPPs paid. The Named DPPs paid only for FPs. Accordingly, because the Named DPPs' "theory of recovery depends on pass-on damages," the co-conspirator exception does not and cannot apply to them. *See ATM Fee,* 686 F.3d at 755.

The parties' stipulation eliminates any genuine question of material fact with respect to the Named DPPs' purchase of the allegedly price-fixed CRTs. With respect to the co-conspirator exception, Defendants have carried their burden of production by showing that the Named DPPs cannot produce evidence sufficient to establish their status as direct purchasers of CRTs. Further, for the reasons just stated, Defendants have shown that they would be entitled to judgment as a matter of law if the Named DPPs relied only on the co-

conspirator exception. Accordingly, the Court GRANTS Defendants' motion for summary judgment against the Named DPPs to the extent that Defendants' motion challenges the Named DPPs' right to proceed under the co-conspirator exception.

### C. *The Ownership and Control Exception*

■ Though *Illinois Brick* generally bars federal antitrust suits by indirect purchasers, Ninth Circuit precedent "allow[s] indirect purchasers to sue 'where a direct purchaser is a division or subsidiary of a co-conspirator.'" *ATM Fee,* 686 F.3d at 756 (quoting *Royal Printing,* 621 F.2d at 326). "*Royal Printing* created an exception when parental control existed, because applying *Illinois Brick* would eliminate the threat of private enforcement ... and close off every avenue for private enforcement." *Id.* (internal quotation marks and citations omitted). As the *Royal Printing* court explained:

> There is little reason for the price-fixer to fear a direct purchaser's suit when the direct purchaser is a subsidiary or division of a coconspirator. Even if the pricing decisions of such a subsidiary or division are necessarily determined by market forces, its litigation decisions will usually be subject to parental control. The co-conspirator parent will forbid its subsidiary or division to bring a lawsuit that would only reveal the parent's own participation in the conspiracy.

621 F.2d at 326 (footnote omitted).

Defendants argue that the Court must distinguish *Royal Printing* from the instant case on the ground that some of the *Royal Printing* plaintiffs purchased the allegedly price-fixed product—paper—while, in this case, no Named DPP purchased the allegedly price-fixed CRTs, as opposed to FPs which incorporated them. Defs. Brief at 20 (citing *Royal Printing,*

621 F.2d at 326–27). The Court disagrees. For the reasons set forth below, the Court concludes that *Royal Printing* controls here and that the Named DPPs have antitrust standing under it. Because *Royal Printing* controls, the Court reviews its facts and holding at some length.

### 1. *Royal Printing*'s Facts and Holding

In *Royal Printing*, two plaintiffs, a printer and a grocery store, brought a treble-damage antitrust suit against a group consisting of the nation's ten largest paper manufacturers. 621 F.2d at 324. The manufacturers did not sell their paper directly, but rather distributed it through two kinds of wholesalers: (1) the manufacturers' own wholesaling divisions or wholly-owned wholesaler subsidiaries, and (2) independent, unaffiliated wholesalers. *Id.* The wholesalers thus were direct purchasers, because they bought paper directly from the accused manufacturers. *See id.* at 326–27. Each defendant-affiliated wholesaler sold paper manufactured by all of the defendants, "not limiting themselves to in-house products." *Id.* at 324. The court noted that wholesale prices were set by market conditions, meaning that the conspiracy alleged among the paper manufacturers did not extend to the wholesale level. *See id.* at 324 n. 1.

Crucially, the printer and grocer never bought paper directly from the allegedly conspiring manufacturers. *Id.* at 324. They bought paper only from non-conspiring wholesalers. Thus, they were indirect purchasers whose suit *Illinois Brick* normally would bar. *See id.* at 325; *see also ATM Fee*, 686 F.3d at 754 (to be a direct purchaser, "the price paid by plaintiffs must be the price set [by the conspiracy]

(not merely 'fixed' in some broad sense)"). The printer, however, had purchased some paper from wholesalers owned or controlled by two of the defendants. *Royal Printing*, 621 F.2d at 325. The paper the printer bought from those wholesalers was not manufactured by the wholesalers' respective corporate parents; it was manufactured by some other defendant. *See id.*

The Ninth Circuit held that the printer had standing to sue under a theory of joint and several liability, regardless of its status as an indirect purchaser and regardless of which defendant had manufactured the purchased paper, but only to the extent that it purchased paper sold by defendant-owned or—controlled wholesalers. *Id.* at 327. The Ninth Circuit reasoned that, because all the manufacturers were highly unlikely to authorize their controlled wholesalers (i.e., the direct purchasers) to sue and thereby risk revealing the conspiracy, the deterrent effect and enforceability of the antitrust laws depended on the existence of antitrust standing for indirect purchasers situated like the printer. *Id.* at 326–27. The grocer, however, which had purchased defendants' paper only through unaffiliated wholesalers, was "truly" an indirect purchaser under *Illinois Brick* and therefore barred from suit. *Id. Illinois Brick* also barred the printer to the extent it had purchased defendants' paper from anyone other than a defendants' subsidiary or division. *Id.*

### 2. *Royal Printing* Controls Here

█ Put simply, the Court sees no meaningful distinction between the facts of *Royal Printing* and the facts of this case. In *Royal Printing*, neither plaintiff ever directly bought the price-fixed paper directly from the manufacturer.[7] Likewise,

---

7. It has been suggested that *Royal Printing* is distinguishable from this case because the *Royal Printing* plaintiffs purchased price-fixed paper while the Named DPPs never purchased a price-fixed CRT from anyone. *See*

Defs' Brief at 20; R & R at 10, 11. The difficulty with this position is that the *Royal Printing* plaintiffs did *not* purchase price-fixed paper. They paid the wholesale price, which

here, the Named DPPs never bought the price-fixed CRT directly from the alleged conspirators (since, to the extent that any named Defendants are wholesalers, they are, by stipulation, not alleged to have conspired to fix the price of any FPs they may have sold to the Named DPPs). In *Royal Printing*, the alleged conspiracy did not include the wholesalers who sold plaintiffs the paper, as shown by the market pricing evident at the wholesale level. Likewise, in this case, the conspiracy alleged among sellers of CRTs does not reach the sellers of FPs. In *Royal Printing*, the court held that, notwithstanding the plaintiffs' status as indirect purchasers, *Illinois Brick* did not bar their suit insofar as they paid a passed-on overcharge to a non-conspiring direct purchaser owned or controlled by any alleged conspirator. That holding applies here as well. The Named DPPs are indirect purchasers, but, under *Royal Printing*, they have standing to sue insofar as they purchased FPs incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring defendant.

Defendants suggest that *Royal Printing* is distinguishable because in that case "no other entity [was] in a position to sue if [the printer's] claims were dismissed on summary judgment." Defs. Brief at 20–21 (citing *Royal Printing*, 621 F.2d at 327). Here, as Defendants point out, the Named DPPs represent only nine of the thirteen members of the putative DPP class, so even if the Court enters summary judgment against those nine parties, other par-

ties stand ready to prosecute this action. The Special Master also relied on this fact, among others, when recommending that Defendants' motion be granted. *See* R & R at 11–12 (noting that the instant motion is not against all DPP class members; that this litigation includes a putative class of indirect purchasers relying on the antitrust laws of states that have passed so-called "*Illinois Brick* repealer" statutes; and that "the Antitrust Division of the Department of Justice has been pursuing criminal actions against some of these defendants").

The Court recognizes that, in the particular circumstances of this case, the enforcement goals of *Illinois Brick* appear already to have been met, which suggests that the policy rationale behind *Royal Printing* does not apply. Defendants urge the Court to decline to apply the *Royal Printing* exception for that reason. Defs. Brief at 20 n. 10. Defendants, however, cite no case where a court has refused to apply *Royal Printing* on those grounds, and this Court is not inclined to become the first to do so. Though there is some intuitive appeal to refusing to apply the exception in cases where enforcement by other parties is ongoing or likely, the better course is to apply the *Royal Printing* exception to any plaintiff who meets the formal criteria. To do otherwise is to engage in the very case-by-case recalibration of *Illinois Brick* that the cases so frequently disapprove. Having been warned against the ad hoc creation or expansion of exceptions, this Court sees no reason why ad hoc disregard

---

was set by market forces. *See Royal Printing*, 621 F.2d at 324 (plaintiffs bought only at wholesale), 326 n. 4 ("[T]he wholesalers' pricing decisions are determined by market forces ...."). The *Royal Printing* plaintiffs, like the Named DPPs here, were indirect purchasers. Ninth Circuit cases distinguish between, on the one hand, an overcharge directly set by and paid to the conspiracy and, on the other, a price paid farther along in the distribution

chain which includes a passed-on overcharge. *E.g., ATM Fee*, 686 F.3d at 754 (distinguishing between direct payment of the price set by conspiring defendants and indirect payment of that price via pass-through, the latter being "merely 'fixed' in some broad sense"). Making antitrust standing depend on whether a plaintiff bought the price-fixed product—that is, whether plaintiff was a direct purchaser— would wipe out the *Royal Printing* exception.

or narrowing of the established exceptions is any more justifiable. *Cf. UtiliCorp*, 497 U.S. at 216–217, 110 S.Ct. 2807 (recognizing that rationales behind *Illinois Brick* might not be apply in all cases but standing by *Illinois Brick* regardless). Moreover, Defendants' interpretation of *Royal Printing* would undermine the "vigorous private enforcement of the antitrust laws," a policy objective which both *Illinois Brick* and *Royal Printing* explicitly seek to vindicate. *Illinois Brick*, 431 U.S. at 745, 97 S.Ct. 2061; *Royal Printing*, 621 F.2d at 326 n. 7. Defendants' position, if accepted, would bar private treble-damages actions against an antitrust defendant whenever the Department of Justice engaged in a criminal prosecution of that same defendant. Even in cases where no criminal charges are filed, Defendants' position would deny antitrust standing to any private plaintiff so long as the antitrust defendant could point to some other person who also could sue. That result cannot be squared with the goal of vigorous private antitrust enforcement. The Court therefore applies *Royal Printing* even though, in the circumstances of this case, other parties stand ready to enforce the antitrust laws.[8]

Defendants' other arguments are similarly unavailing. Defendants suggest that the physical differences between the paper at issue in *Royal Printing* and the CRTs at issue here support denial of antitrust standing to the Named DPPs. Defs. Brief at 16–17. Defendants focus on how the paper in *Royal Printing* was "not changed in any way" between manufacture and wholesale, while in this case, "the products have been changed" because the CRTs were integrated into FPs. *Id.* Supposing that paper and CRTs differ in this way, the Court discerns no reason why the difference would matter for standing purposes. *Cf. UtiliCorp*, 497 U.S. at 216, 110 S.Ct. 2807 (quoting *Illinois Brick*, 431 U.S. at 744, 97 S.Ct. 2061) (declining to apply *Illinois Brick* differently in "particular types of markets"). The policies underlying *Illinois Brick* and its exceptions apply with equal force regardless of whether or how a particular good is modified as it passes through the chain of distribution. For instance, the risk of multiple liability from indirect purchasers does not depend on whether a defendant sells paper or CRTs. Nothing suggests that CRT sellers are any more likely than paper manufacturers to permit direct purchasers over whom they exert ownership or control to bring a lawsuit that would reveal an alleged conspiracy. *See Royal Printing*, 621 F.2d at 326. Further, the Ninth Circuit has applied *Illinois Brick* and its exceptions without comment in cases involving fees, which obviously do not involve modification of any physical product. *E.g., ATM Fee*, 686 F.3d 741; *Freeman*, 322 F.3d 1133. Physical differences between paper and CRTs supply no reason to refrain from applying the ownership and control exception here.

Next, Defendants argue that the Court should disregard *Royal Printing* because its "underlying rationale ... no longer carries the same force as it once did." Defs. Brief at 20–21. Defendants explain that, when the Ninth Circuit decided *Royal Printing*, its precedents denied indirect purchasers any remedy under state antitrust laws, whereas now indirect purchasers may seek such remedies and, in this case, have done so. *Id.* (citing *In re Cement & Concrete Antitrust Litig.*, 817 F.2d 1435, 1447 (9th Cir.1987) *rev'd sub nom. California v. ARC Am. Corp.*, 490 U.S. 93,

---

**8.** The Court notes that *Illinois Brick* itself set forth a rule aimed at preventing multiple recoveries even though "[t]he potential of possible multiple recoveries [was] not present in [that] case." 431 U.S. at 763 n. 22, 97 S.Ct. 2061 (Brennan, J., dissenting).

109 S.Ct. 1661, 104 L.Ed.2d 86 (1989)). According to Defendants, indirect purchasers' standing to bring state antitrust actions obviates the need for the *Royal Printing* exception. *Id.* at 21; *see also id.* at 23–24 (acknowledging existence of other direct purchasers, as well as ongoing criminal prosecution of some Defendants). Whatever the merits of Defendants' argument, it is better addressed to the Ninth Circuit, which not only has yet to overrule or narrow *Royal Printing,* but reaffirmed and clarified its holding just months ago in *ATM Fee. See* 686 F.3d at 756–58. *Royal Printing* remains the law of this circuit and binding on this Court.

Defendants next criticize the Named DPPs' reliance on two Third Circuit decisions, *Sugar* and *Linerboard.* Defs. Brief at 22. Defendants describe *ATM Fee* as having "expressly rejected the approach taken by the Third Circuit." *Id.* It is true that *Sugar* and *Linerboard* conflict with Ninth Circuit law concerning the coconspirator exception. *See ATM Fee,* 686 F.3d at 755 n. 7. However, the *ATM Fee* court specifically noted that *Sugar* "exemplifies the exception allowed when an upstream violator controls or owns the direct purchaser"—that is, the *Royal Printing* exception. *Id. ATM Fee* makes clear that, while *Sugar* and *Linerboard* do not reflect the law of the Ninth Circuit where the co-conspirator exception is concerned, *Sugar,* at least, does exemplify the law of the Ninth Circuit where the ownership and control exception is concerned.

Defendants characterize the Named DPPs' citation of *Freeman.* and the two Third Circuit cases as an impermissible attempt to fashion a new exception to *Illinois Brick.* Defs. Brief at 21–23. That characterization is inaccurate. As discussed earlier, *Freeman* and *Sugar* are applications, not expansions, of the ownership and control exception already set forth in *Royal Printing.*

Defendants also argue that they are immunized from antitrust liability for the sole reason that CRTs are a "vital input" into FPs. Defs. Brief at 23. They emphasize a passage in *ATM Fee* which described *Illinois Brick* as having "rejected exceptions for markups by middlemen or when the price-fixed good is a vital input to a larger product." *ATM Fee,* 686 F.3d at 753 (citing *Illinois Brick,* 431 U.S. at 743–45, 97 S.Ct. 2061). Defendants' argument overshoots the mark. This passage in *ATM Fee* merely states the general prohibition against standing based on pass-on damages, and says nothing about "rejecting" established exceptions, such as the *Royal Printing* exception. Indeed, rather than rejecting the three established exceptions, *ATM Fee* affirmed and applied each of them, making them part of the case's holding. Moreover, Defendants' interpretation of *ATM Fee*'s "vital input" remark would create, in effect, an exception to the exceptions, one that would apply whenever the price-fixed good was a "vital input." Even assuming that one could define what makes some inputs "vital" and others not, this Court has already declined to narrow the established *Royal Printing* exception for reasons unique to the particularities of this case or to the physical nature of CRTs.

Lastly, Defendants suggest that standing should be denied to the Named DPPs because, as indirect purchasers, their claims would involve the complicated apportionment of damages warned against in *Illinois Brick.* Defs. Brief at 21–22. The concern is misplaced. *Royal Printing* explicitly addressed the issue of apportioning damages and held that, in cases proceeding under the ownership and control exception, no apportionment is needed; plaintiffs are permitted to sue "for the entire overcharge." 621 F.2d at 327.

872

The Court expresses no view as to whether the Named DPPs will be able to prove what is needed to win relief as indirect purchasers under the ownership and control exception. In their sealed brief and its supporting declarations, the Named DPPs present evidence based on the discovery they have taken so far. DPP Brief at 4–5, 13. This evidence raises a genuine issue of material fact as to whether the Named DPPs purchased FPs incorporating the allegedly price-fixed CRTs from some defendant-owned or -controlled division or subsidiary. Accordingly, Defendants have not carried their summary judgment burden of showing an absence of evidence in support of applying the ownership and control exception. To the extent that Defendants' summary judgment motion challenges the Named DPPs' standing on that ground, the motion is DENIED.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment against Plaintiffs Arch Electronics, Inc.; Crago d/b/a Dash Computers, Inc.; Electronic Design Company; Meijer, Inc. and Meijer Distribution, Inc.; Nathan Muchnick, Inc.; Orion Home Systems, LLC; Radio & TV Equipment, Inc.; Royal Data Services, Inc.; and Studio Spectrum, Inc., is GRANTED IN PART and DENIED IN PART. Because these Plaintiffs did not purchase allegedly price-fixed CRTs directly, they are indirect purchasers and *Illinois Brick* bars their suit unless one of the three recognized exceptions applies. The Court concludes that the ownership-and-control exception of *Royal Printing* does apply. Therefore, the Named DPPs have standing to sue for alleged overcharges passed on to them when they purchased an FP containing an allegedly price-fixed CRT from an entity allegedly owned or controlled by any allegedly conspiring Defendant. The Named DPPs do not have standing, however, to sue for alleged overcharges passed on to them from any other seller of FPs.

IT IS SO ORDERED.